UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701,<br><br>   Plaintiff,<br><br>  v.<br><br>DAVID BERNHARDT,<br>in his official capacity as Secretary of the<br>U.S. Department of the Interior,<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>   and<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>   Defendants. | Case No: _____<br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

## INTRODUCTION

1. The Trump administration has listed only 16 species as endangered or threatened under the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA" or "Act"). This is the lowest figure of any administration since 1982, the first two years of the Reagan administration, whose few listings drove Congress to amend the ESA to impose strict new deadlines for making listing decisions in response to listing petitions submitted by interested persons. 16 U.S.C. § 1533(b); H.R. Rep. No. 97-567 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 2807, 2809; H.R. Conf. Rep. No. 97-835 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 2807, 2860-62.

2.      The ongoing failure of the U.S. Fish and Wildlife Service ("Service")—the federal agency responsible for administering the ESA for these species—to timely list species and to finalize their critical habitat designations has contributed to a growing backlog of over 500 species that are awaiting overdue decisions. Not only are these listing decisions and critical habitat designations late according to the ESA's statutory deadlines, but they are also overdue under the Service's own National Listing Workplan ("Workplan"), which was purported to be Defendants' plan for eliminating the backlog.

3.      Therefore, Plaintiff Center for Biological Diversity ("Center"), an environmental conservation organization that works to protect native wildlife species and their habitats, brings this action under the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(1)(C), to challenge the failure of the Secretary of the U.S. Department of the Interior ("Secretary") and the Service: (1) to make statutorily required 12-month findings on petitions to list 16 species as endangered or threatened under the ESA, *id.* § 1533(b)(3)(B); (2) to publish final listing determinations for two species, *id.* § 1533(b)(6)(A); and (3) to designate critical habitat for six species. *Id.* § 1533(a)(3)(A)(i), (b)(6)(A)(ii)(I), (b)(6)(C); *id.* § 1540(g)(1)(C).

4.      Specifically, the Center seeks to enforce the ESA's requirements with an order directing the Service:

> (1) To publish 12-month findings, pursuant to subsection 4(b)(3)(B) of the ESA, *id.* § 1533(b)(3)(B), for the Bartram stonecrop, beardless chinch weed, Big Cypress epidendrum, brook floater, Cape Sable orchid, clam-shell orchid, Elk River crayfish, Franklin's bumblebee, longsolid, Panamint alligator lizard, pyramid pigtoe, purple lilliput, round hickorynut, seaside alder, tricolored blackbird, and yellow-banded bumblebee;

(2) To publish final listing determinations, pursuant to subsection 4(b)(6)(A) and (b)(6)(B)(iii), *id.* § 1533(b)(6)(A), (b)(6)(B)(iii), for the meltwater lednian stonefly and western glacier stonefly;

(3) To publish proposed, and subsequent final, rules designating critical habitat pursuant to subsection 4(b)(6)(C)(ii) of the ESA, *id.* § 1533(b)(6)(C)(ii), for the Florida bristle fern, Miami tiger beetle, and Suwannee moccasinshell; and

(4) To publish final rules to designate critical habitat, pursuant to subsection 4(a)(3)(A)(i), (b)(6)(A)(ii)(I), and (b)(6)(C) of the ESA, *id.* § 1533(a)(3)(A)(i), (b)(6)(A)(ii)(I), (b)(6)(C), for the black pine snake, elfin-woods warbler, and slickspot peppergrass.

5.      The Service's failure to make these listing decisions and critical habitat designations is delaying the ESA's substantive legal protections for these endangered and threatened species, thereby allowing these species to continue to decline, heightening the risk of their extinction, and ultimately making their recovery costlier and more difficult.

6.      To remedy Defendants' violations of the ESA, the Center requests an order(s) declaring that Defendants are in violation of the ESA and its mandatory deadlines as outlined above and ordering Defendants to publish the overdue actions according to enforceable deadlines. *Id.* § 1540(g)(1).

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g)(1)(C) (action arising under ESA citizen suit provision), 5 U.S.C. § 702 (review of agency action under the Administrative Procedure Act ("APA")), and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      The Court may grant the relief requested under the ESA, 16 U.S.C. § 1540(g), the

APA, 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

9.      Plaintiff provided sixty days' notice of Plaintiff's intent to file this suit pursuant to

the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C), by letter to Defendants dated

January 8, 2019. Defendants have not remedied their continuing ESA violations by the date of

this Complaint's filing. Therefore, an actual controversy exists between the parties under 28

U.S.C. § 2201.

10.     The federal government has waived sovereign immunity in this action pursuant to

16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

11.     Venue is proper in the United States District Court for the District of Columbia

pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because Defendants reside in the

district and a substantial part of the events giving rise to the Center's claims occurred in this

district.

## PARTIES

12.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a nonprofit organization

that works through science, law, and creative media to secure a future for all species, great or

small, hovering on the brink of extinction. The Center is incorporated in California and

headquartered in Tucson, Arizona, with field offices throughout the United States and Mexico.

The Center has more than 69,000 members. The Center and its members are concerned with the

conservation of imperiled species, including the ones at issue in this suit, and with the effective

implementation of the ESA.

13.     The Center's members include individuals with professional, aesthetic, and

recreational interests in the Big Cypress epidendrum, brook floater, Cape Sable orchid, clam-

shell orchid, Elk River crayfish, longsolid, pyramid pigtoe (otherwise known as the pink pigtoe), purple lilliput, round hickorynut, seaside alder, Bartram stonecrop, beardless chinch weed, Franklin's bumblebee, Panamint alligator lizard, tricolored blackbird, yellow-banded bumblebee, meltwater lednian stonefly, western glacier stonefly, Florida bristle fern, Miami tiger beetle, Suwannee moccasinshell, black pine snake, elfin-woods warbler, and slickspot peppergrass, and are similarly interested in the health of these species' habitat.

14.     The Center and its members' interests in these species and their habitats is necessarily dependent upon the persistence of healthy and sustainable populations of—and ultimately the recovery of—those species in the wild. Yet unless these species are promptly protected under the ESA, they will continue to decline and may even go extinct—indeed, since the ESA was enacted in 1973, at least 47 species have gone extinct while awaiting protection, while very few species have gone extinct once protected under the ESA. Out of these concerns, the Center and other interested persons have submitted petitions to the Service to extend the substantive protections of the ESA to these species by listing them as "endangered" or "threatened." Defendants' failure to comply with their nondiscretionary duties under the ESA deprives the species at issue in this Complaint of statutory protections that are vitally necessary to their survival and recovery. Until they are protected under the ESA, the Center and its members' interests in these species are being impaired.

15.     Therefore, the Center and its members are injured by Defendants' failure to make timely listing decisions and critical habitat designations under the ESA, as Defendants' failure to timely act prevents the application of the ESA's substantive protections to these species. These injuries are actual, concrete injuries that are presently suffered by the Center and its members, are directly caused by Defendants' acts and omissions, and will continue to occur unless the

Court grants relief. The relief sought herein would redress these injuries. The Center and its members have no adequate remedy at law.

16.     Defendant DAVID BERNHARDT is the Secretary of the Department of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing decisions and critical habitat designations. Secretary Bernhardt is sued in his official capacity.

17.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA for the species at issue in this suit, including through prompt compliance with the ESA's mandatory listing and critical habitat deadlines. The Secretary has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

## STATUTORY FRAMEWORK

18.     The ESA is a comprehensive federal statute declaring that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). The purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." *Id*. § 1531(b).

19.     The ESA has a suite of substantive legal protections that apply to "species," *id*. § 1532(16) (defining "species"), once they are listed as endangered or threatened. For example, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or

6

adverse modification" of any listed species' "critical habitat." *Id*. § 1536(a)(2). ESA section 9 prohibits, among other actions, "any person" from "taking" protected animals without a lawful authorization from the Service. *Id*. §§ 1538(a)(1)(B), 1539. Other provisions require the Service to designate "critical habitat" for listed species, *id*. § 1533(a)(3); require the Service to "develop and implement" recovery plans for listed species, *id*. § 1533(f); authorize the Service to acquire land for the protection of listed species, *id*. § 1534; and authorize the Service to make federal funds available to states in order to assist in the conservation of endangered and threatened species, *id*. § 1535(d).

**A.  Listing Species as Endangered or Threatened Under the ESA**

20.     To ensure that endangered and threatened species are protected, ESA section 4 requires that the Secretary list them as "endangered" or "threatened" based on five statutory categories of threats. *Id*. § 1533(a)(1).

21.     To ensure that listing decisions are timely, ESA section 4 sets forth a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. This process includes nondiscretionary deadlines that require the Service to make three decisions in response to listing petitions according to mandatory deadlines. These three findings, described below, are the 90-day finding, the 12-month finding, and for species that the Service determines warrant protection, the final listing determination.

22.     Thus, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id*. § 1533(b)(3)(A). This is known as the "90-day finding." If the Service finds in

the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

23.     If, on the other hand—and as in this case—the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, which is known as a "status review." *Id.*

24.     Upon completion of the status review, and within 12 months from the date that it receives the petition, the Service must make a 12-month finding with one of three findings: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain circumstances are present. *Id.* § 1533(b)(3)(B). This is known as a "12-month finding."

25.     If in the 12-month finding the Service concludes that listing is warranted, the agency must publish notice in the Federal Register of a proposed regulation to list the species as endangered or threatened and take public comment on the proposed listing determination. *Id.* § 1533(b)(3)(B)(ii).

26.     Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final listing rule. *Id.* § 1533(b)(6)(A). This is known as a "final listing determination."

27.     If the Service finds that there is substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision, the Service may extend this one-year period by six months to solicit additional data. *Id.* § 1533(b)(6)(B)(i). However, before the expiration of that six-month extension, the Service must publish in the

Federal Register either a final regulation to implement the determination or a withdrawal of the regulation along with a finding on which the withdrawal is based. *Id.* § 1533(b)(6)(B)(ii)-(iii).

**B. Critical Habitat Designations**

28.    With limited exceptions, the Service is required to designate "critical habitat" at the time of an imperiled species' listing as endangered or threatened. *Id.* § 1533(a)(3)(A). Thus, the Service must, "to the maximum extent prudent and determinable," designate critical habitat for a species "concurrently with making a determination" that it is endangered or threatened," *id.* § 1533(a)(3)(A)(i), and within one year of proposing critical habitat. *Id.* § 1533(b)(6)(A)(ii), (b)(6)(C)(ii).

29.    In requiring the designation of critical habitat at the time of listing the species, the ESA aims to ensure that all species at risk of extinction receive these essential habitat protections in a timely manner. *Id.* § 1533(a)(3)(A), (b)(6)(A)(ii), (b)(6)(C); *see also id.* § 1531(b) (statutory directive to "provide a means whereby the ecosystems upon which endangered . . . and threatened species depend may be conserved").

30.    Designation of critical habitat is "not determinable" only when "[d]ata sufficient to perform required analyses are lacking, or . . . [t]he biological needs of the species are not sufficiently well known to identify any area that meets the definition of 'critical habitat.'" 50 C.F.R. § 424.12(a)(2). If critical habitat is "not . . . determinable" at the time of listing, the Service may extend the deadline to designate critical habitat by "no more than one additional year," by which point it must publish a final regulation "based on such data as may be available at the time." 16 U.S.C. § 1533(b)(6)(C)(ii).

31.     Designating critical habitat is "not prudent" only when: (1) the species is threatened by taking, overcollection, or other human activity, and critical habitat would increase that threat; or (2) it "would not be beneficial to the species." 50 C.F.R. § 424.12(a)(1).

32.     The Service must make critical habitat designations based on "the best scientific data available." 16 U.S.C. § 1533(b)(2).

33.     If the Service finds that designating critical habitat is "not prudent" or "not determinable," it must "state the reasons for not designating critical habitat in the publication of proposed and final rules listing a species." 50 C.F.R. § 424.12(a).

34.     Critical habitat is defined to include specific areas that are known to be occupied by the species, with the "[p]hysical or biological features" that are "essential to the conservation of the species" and which "may require special management considerations or protection," as well as specific areas unoccupied by the species that "are essential for the conservation of the species." 16 U.S.C. § 1532(5)(A). In turn, "conservation" means "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the Act] are no longer necessary." *Id.* § 1532(3). Accordingly, critical habitat includes areas that require proper management to ensure a listed species not only survives, but also recovers from the extinction risk.

35.     Protecting a species' critical habitat is crucial for the protection and recovery of many listed species—particularly those that have become endangered or threatened because of historical and ongoing habitat loss or degradation. For example, section 7(a)(2) of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of their "critical habitat." *Id.* § 1536(a)(2).

36.     However, the ESA does not safeguard a species' critical habitat until the Service designates it. Accordingly, it is essential that the Service dutifully follow the Act's procedures and deadlines to ensure it designates critical habitat in a timely manner.

## OVERVIEW OF THE SERVICE'S EFFORTS TO LIST AND PROTECT SPECIES UNDER THE ESA

37.     The ESA's purpose of conserving endangered and threatened species is undermined by lengthy bureaucratic delays and political interference in the listing process and designations of critical habitat.

38.     Between 1974 and 2014, it took the Service more than 12 years on average to complete the listing processes for a single species even though the process is supposed to take only two years under the ESA's mandatory deadlines.

39.     Since the passage of the Act, at least 47 species have gone extinct while awaiting protection. Many more imperiled species continue to decline while Defendants drag their feet, failing to make the requisite listing decisions and critical habitat designations, making recovery more tenuous and expensive.

40.     Most listing determinations made by the Service in response to listing petitions, such as those submitted by the Center, have come only following litigation. After an audit of the Service's listing program in 1990, the Interior Department's inspector general concluded that the Service was not making sufficient progress in reducing a backlog of over 3,000 species awaiting protection. In response, conservation groups brought litigation that culminated in settlements requiring the Service to making listing determinations for hundreds of candidate species. *See Fund for Animals v. Lujan*, Civ. No. 92-800 (D.D.C.  Dec. 15, 1992) (Settlement Agreement); *Cal. Native Plant Soc'y v. Lujan*, Civ. No. 91-0038 (E.D. Cal. Aug. 22, 1991) (Settlement Agreement); *Conservation Council for Hawaii v. Lujan*, Civ. No. 89-953 (D. Haw. May 9, 1990)

(Settlement Agreement). This in turn led to a marked rise in annual final listing determinations that extended through the mid-1990s.

41.     Following implementation of a series of administrative policies that Defendants adopted between the late-1990s to 2000, listings came to be almost entirely driven by petitions and litigation. Between 2000 and 2009, during the George W. Bush administration, only 62 species received final listing determinations despite a candidate backlog of over 250 species.

42.     Litigation filed by the Center and others in 2010 resulted in two settlement agreements requiring the Service to make listing determinations for over 250 species. *See* Order Granting Joint Motion for Approval of Settlement Agreement and Order of Dismissal of Center for Biological Diversity's Claims, *In Re: Endangered Species Act Section 4 Deadline Litigation*, No. 1:10-mc-00377-EGS, MDL No. 2165 (D.D.C. Sept. 9, 2011) (ECF No. 56); Order Granting Joint Motion for Approval of Settlement Agreement and Order of Dismissal of WildEarth Guardians' Claims (ECF No. 55) (together "the Listing Settlement").

43.     Nearing the completion of the Listing Settlement, in 2016 the Service announced the Workplan, a schedule for publishing over 500 overdue findings that were among the Service's "highest priorities," including 12-month findings and final listing determinations that were not addressed by the Listing Settlement.

44.     All the species-specific decisions and designations at issue in this Complaint are overdue under the ESA's nondiscretionary deadlines as well as under the Service's Workplan for the agency's highest priorities.

## FACTUAL BACKGROUND

### A.  Ten Southeastern United States Species

45.     On April 20, 2010, the Center submitted a formal petition to the Service, requesting the agency to list 404 aquatic, riparian, and wetland southeastern United States species as endangered or threatened under the ESA. These species included the Big Cypress epidendrum, brook floater, Cape Sable orchid, clam-shell orchid, Elk River crayfish, longsolid, pyramid pigtoe, purple lilliput, round hickorynut, and seaside alder. The threats to these species include: habitat loss and degradation, including channel alteration and impoundment; agriculture; industrial development; mining; livestock grazing; commercial and residential development; logging; overexploitation; wastewater treatment plants; and invasive species. These threats have resulted in drastic reductions in these species' historic ranges. Many are also at greater risk from stochastic events because their numbers have dwindled and many of their remaining populations are small and isolated.

46.     On September 27, 2011, the Service published 90-day findings in the Federal Register, in response to the Center's listing petition, finding that listing as endangered or threatened "may be warranted" for the Big Cypress epidendrum, brook floater, Cape Sable orchid, clam-shell orchid, Elk River crayfish, longsolid, pyramid pigtoe, purple lilliput, round hickorynut, and seaside alder. 76 Fed. Reg. 59,836, 59,862. The positive 90-day findings triggered a requirement that the Service commence status reviews and make 12-month findings within a year of receiving the listing petition—i.e., by April 20, 2011. This deadline had expired by the time the Service published the positive 90-day findings on September 27, 2011.

47.     The Service's Workplan called for these 12-month findings to be made in fiscal year 2018.

48.     After the Service failed to adhere to its own Workplan, and after seven years had elapsed since the April 20, 2011 deadline for the 12-month findings, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make required 12-month findings for the: Big Cypress epidendrum, brook floater, Cape Sable orchid, clam-shell orchid, Elk River crayfish, longsolid, pyramid pigtoe, purple lilliput, round hickorynut, and seaside alder. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make these 12-month findings.

49.     Until Defendants act and make these 12-month findings and issue final listing determinations, the Big Cypress epidendrum, brook floater, Cape Sable orchid, clam-shell orchid, Elk River crayfish, longsolid, pyramid pigtoe, purple lilliput, round hickorynut, and seaside alder will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

## B. Two Arizona Plants from the Madrean Sky Islands of Arizona

50.     On July 7, 2010, the Center submitted a formal petition to the Service, requesting the agency list the Bartram stonecrop and the beardless chinch weed, two Arizona plants from the Madrean Sky Islands of Arizona, as endangered or threatened. The "sky islands" of the southwestern United States and Northwest Mexico are arid, high-elevation desert plateaus and mountain ranges with a great degree of species diversity due to their isolation and the convergence of several climate and vegetation zones.

51.     The Bartram stonecrop is one of these species; it is a rare and beautiful succulent severely threatened by collection and habitat destruction. When the Center petitioned for its

protection, there were only 12 known historical populations and some of those populations may be extirpated.

52.     The beardless chinch weed is a flower in the aster family that is severely threatened by livestock grazing, road maintenance, recreation, mining, and other threats. It is found at only 13 sites.

53.     The Service has known of the threats to these species since 1982, when a group of experts first recommended federal protection.

54.     On August 8, 2012, the Service published 90-day findings in the Federal Register, in response to the Center's listing petition, finding that listing the Bartram stonecrop and the beardless chinch weed as endangered or threatened "may be warranted." 77 Fed. Reg. 47,352, 47,356. The positive 90-day findings triggered the requirement that the Service commence status reviews and publish 12-month finding within a year of receiving the Center's listing petition—i.e., by July 7, 2011. This deadline had expired by the time the Service published the positive 90-day findings on August 8, 2012.

55.     The Service's Workplan called for the Bartram stonecrop's and the beardless chinch weed's 12-month findings to be made in fiscal year 2018.

56.     After the Service failed to adhere to its Workplan, and after seven years had elapsed since the July 7, 2011 deadline for the 12-month findings, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make required 12-month findings for the Bartram stonecrop and the beardless chinch weed. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make these 12-month findings.

57.     Until Defendants act and make 12-month findings and issue final listing determinations, the Bartram stonecrop and the beardless chinch weed will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**C. Franklin's Bumblebee**

58.     On June 23, 2010, the Xerces Society for Invertebrate Conservation and Dr. Robbin W. Thorp submitted a formal petition to the Service, requesting the agency list the Franklin's bumblebee as endangered or threatened under the ESA and designate critical habitat. With a range between the coast and the Sierra-Cascade ranges in southern Oregon and northern California, the Franklin's bumblebee has the most limited geographic distribution of any bumblebee in North America. The species and its narrow range are severely threatened by: exotic diseases; habitat loss due to destruction, degradation, and conversion; pesticides and pollution; inadequacy of current rules, regulations, and law; exotic plant species introduction; increased human use of native habitat; climate change affecting alpine habitat; and alteration of wildfire severity and intensity.

59.     On September 13, 2011, the Service published a 90-day finding in the Federal Register, in response to the listing petition, finding that listing the Franklin's bumblebee as endangered or threatened "may be warranted." 76 Fed. Reg. 56,381, 56,391. The positive 90-day finding triggered a requirement that the Service commence a status review and publish a 12-month finding within a year of receiving the listing petition—i.e., by June 23, 2011. This deadline had expired by the time the Service published the positive 90-day finding on September 13, 2011.

60.     The Service's Workplan called for the Franklin's bumblebee's 12-month finding to be made in fiscal year 2018.

61.     After the Service failed to adhere to its Workplan, and after seven years had

elapsed since the June 23, 2011 deadline for the 12-month finding, by letter dated January 8,

2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. §

1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.

The Center advised Defendants that the Center intended to file suit to enforce the ESA's

mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

62.     Until Defendants act and make a 12-month finding and issue a final listing

determination, the Franklin's bumblebee will continue to decline toward extinction. There is no

legal excuse for Defendants' failure to act.

**D.  Panamint Alligator Lizard**

63.     On July 11, 2012, the Center submitted a formal petition to the Service,

requesting the agency list the Panamint alligator lizard as endangered or threatened under the

ESA and designate critical habitat. With a surprisingly long tail in relation to its body size, the

Panamint alligator lizard's ongoing vitality is threatened by its small range, rarity, and the

ongoing threat of habitat degradation due to expanding mining operations, off-highway vehicle

activity, grazing, and the introduction of non-native invasive plant species.

64.     On September 18, 2015, the Service published a 90-day finding in the Federal

Register, in response to the Center's listing petition, finding that listing the Panamint alligator

lizard as endangered or threatened "may be warranted." 80 Fed. Reg. 56,423, 56,432. The

positive 90-day finding triggered a requirement that the Service commence a status review and

publish a 12-month finding within a year of receiving the listing petition—i.e., by July 11, 2013.

This deadline had already expired by the time the Service published the positive 90-day finding

on September 18, 2015.

65.     The Service's Workplan called for the Panamint alligator lizard's 12-month finding to be made in fiscal year 2018.

66.     After the Service failed to adhere to its Workplan, and after five years had elapsed since the July 11, 2013 deadline for the 12-month finding, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

67.     Until Defendants act and make a 12-month finding and issue a final listing determination, the Panamint alligator lizard will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**E.  Tricolored Blackbird**

68.     On February 3, 2015, the Center submitted a formal petition to the Service, requesting the agency list the tricolored blackbird as endangered or threatened under the ESA and designate critical habitat. The tricolored blackbird is a colonial-nesting passerine largely endemic to California. It forms the largest colonies of any passerine in North America since the extinction of the passenger pigeon.

69.     Tricolored blackbird populations are declining at an alarming rate in large part due to the direct loss and degradation of habitat from human activities. These activities include: the historical market hunting of blackbirds; use of poison for crop protection; pesticides; the harvest of grain crops grown for dairy silage and other agricultural grain crops; and the plowing of weedy fields during the nesting season throughout most of its range.

70.     On September 18, 2015, the Service published a 90-day finding in the Federal

Register, in response to the Center's listing petition, finding that listing the tricolored blackbird

as endangered or threatened "may be warranted." 80 Fed. Reg. 56,423, 56,432. The positive 90-

day finding triggered a requirement that the Service commence a status review and publish a 12-

month finding within a year of receiving the listing petition—i.e., by February 3, 2016.

71.     The Service's Workplan called for the tricolored blackbird's 12-month finding to

be made in fiscal year 2018.

72.     After the Service failed to adhere to its Workplan, and after two years had elapsed

since the February 3, 2016 deadline for the 12-month finding, by letter dated January 8, 2019, the

Center notified the Defendants that they have violated section 4 of the ESA, 16 U.S.C. §

1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA.

The Center advised Defendants that the Center intended to file suit to enforce the ESA's

mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

73.     Until Defendants make a 12-month finding and issue a final listing determination,

the tricolored blackbird will continue to decline toward extinction. There is no legal excuse for

Defendants' failure to act.

**F.  Yellow-banded Bumblebee**

74.     On September 15, 2015, the Defenders of Wildlife submitted a formal petition to

the Service, requesting the agency list the yellow-banded bumblebee as endangered or threatened

under the ESA and designate critical habitat.

75.     The petition explained that the yellow-banded bumblebee was historically very

common in the Northeast and Midwestern United States, in addition to Canada. However, the

population numbers of the yellow-banded bumblebee have crashed, resulting in a drastic

reduction in the range and relative abundance of the species. Diseases introduced by commercially reared bumblebees and the use of pesticides are the major reasons for this collapse. Habitat destruction, degradation and fragmentation, changes in population dynamics, and climate change have also contributed to this species' imperilment.

76.     On March 16, 2016, the Service published a 90-day finding in the Federal Register, in response to the listing petition, finding that listing the yellow-banded bumblebee as endangered or threatened "may be warranted." 81 Fed. Reg. 14,058, 14,072. The positive 90-day finding triggered a requirement that the Service commence a status review and publish a 12-month finding within a year of receiving the listing petition—i.e., by September 15, 2016.

77.     The Service's Workplan called for the yellow-banded bumblebee's 12-month finding to be made in fiscal year 2018.

78.     After the Service failed to adhere to its Workplan, and after two years had elapsed since the September 15, 2016 deadline for the 12-month finding, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make a 12-month finding on the petition as required by the ESA. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date, Defendants have failed to make this 12-month finding.

79.     Until Defendants act and make a 12-month finding and issue a final listing determination, the yellow-banded bumblebee will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**G.  Meltwater Lednian Stonefly**

80.     The meltwater lednian stonefly is endemic to northwestern Montana, with most populations located within Glacier National Park. A small insect, the flies begin life as eggs,

hatch into aquatic nymphs, and later mature into winged adults. Dependent on high-elevation,

fishless, alpine streams originating from glaciers, icefields, snowpack, alpine springs, and glacial

lake outlets, the species' habitat is severely threatened by climate change and drought.

81.     The Service published a 90-day finding that listing the meltwater lednian stonefly

may be warranted. 74 Fed. Reg. 41,649, 41,622 (Aug. 18, 2009). Subsequently, the Service

published a 12-month finding that the listing of the meltwater lednian stonefly was warranted but

precluded by higher priority listing actions. 76 Fed. Reg. 18,684, 18,701 (Apr. 5, 2011). Then, on

Oct. 4, 2016, the Service proposed to list the meltwater lednian stonefly as threatened due to

habitat fragmentation and degradation resulting from climate change and drought. 81 Fed. Reg.

68,379, 68,394. The Service later reopened the comment period to address new information

about the western glacier stonefly, which was proposed for listing at the same time, 82 Fed. Reg.

50,360 (Oct. 31, 2017), but no new information regarding the sufficiency or accuracy of the

available data relevant to the meltwater lednian stonefly was included in the reopening of the

comment period.

82.     The Service's proposal to list the meltwater lednian stonefly triggered a

requirement that the Secretary make a final determination on the proposed listing within one year

of publication of the proposed regulation. 16 U.S.C. § 1533(b)(6)(A). The Secretary was required

to make a final determination on the species' status by October 4, 2017.

83.     The Service's Workplan called for the meltwater lednian stonefly's final

determination to be made in fiscal year 2018.

84.     After the Service failed to adhere to its Workplan, and after over a year had

elapsed since the October 4, 2017 deadline for the final determination, by letter dated January 8,

2019, the Center notified Defendants that they have violated section 4 of the ESA, *id.*, by failing

to make a final listing determination for the species. The Center advised Defendants that the

Center intended to file suit to enforce the ESA's mandatory listing deadlines. To date,

Defendants have failed to make a final listing determination on the meltwater lednian stonefly's

status.

85.     Until Defendants act and make a final listing determination, the meltwater lednian

stonefly will continue to decline toward extinction. There is no legal excuse for Defendants'

failure to act.

**H.  Western Glacier Stonefly**

86.     The western glacier stonefly is a glacier meltwater-dependent stonefly endemic to

northwestern Montana, with most populations located within Glacier National Park. Immature

stoneflies, including the western glacier stonefly, have very narrow temperature requirements,

making them especially vulnerable to extinction from increases in ambient water temperature.

This species is threatened with extinction because of habitat loss and degradation due to

increased water temperatures and decreased dissolved oxygen as a result of climate change,

along with the loss of the glacial habitat on which the species depends. Drought is also a

significant threat to the species.

87.     On December 19, 2011, the Service published a 90-day finding that listing the

western glacier stonefly may be warranted. 76 Fed. Reg. 78,601, 78,609. Nearly five years later,

the Service found that listing the western glacier stonefly was warranted and proposed listing it

as a threatened species. 81 Fed. Reg. 68,379, 68,394 (Oct. 4, 2016). The Service later reopened

the comment period on the proposed rule to address information the Service received about the

species' range. 82 Fed. Reg. 50,360 (Oct. 31, 2017).

88.     The Service's proposal to list the western glacier stonefly triggered a requirement

that the Secretary make a final determination on the proposed listing within one year of

publication of the proposed regulation—i.e., by October 4, 2017. 16 U.S.C. § 1533(b)(6)(A).

After the Secretary failed to make a final determination or extend the comment period within a

year of the proposed listing, the Secretary reopened the comment period for one month due to

additional information the agency had received concerning the western glacier stonefly's range.

82 Fed. Reg. at 50,360. The Service did not explicitly invoke its right to extend the one-year

period in order to solicit additional data, 16 U.S.C. § 1533(b)(6)(B)(i), nor did it make a final

determination or issue a withdrawal of the proposed rule within six-months from the reopening

of the comment period. *Id.* § 1533(b)(6)(B)(iii).

89.     The Service's Workplan called for the western glacier stonefly's final

determination to be made in fiscal year 2018.

90.     After the Service failed to adhere to its Workplan, and after over a year had

elapsed since the October 4, 2017 deadline for the final determination, by letter dated January 8,

2019, the Center notified Defendants that they have violated section 4 of the ESA, *id.* §

1533(b)(6)(A), (b)(6)(B)(iii), by failing to make a final listing determination for the species. The

Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory

listing deadlines. To date, Defendants have failed to make a final listing determination on the

western glacier stonefly's status.

91.     Until Defendants act and make a final listing determination, the western glacier

stonefly will continue to decline toward extinction. There is no legal excuse for Defendants'

failure to act.

**I.  Florida Bristle Fern**

92.     The Florida bristle fern is endemic to the Miami-Dade and Sumter counties of

Florida. Its range is highly restricted because of its need for sheltered, shady habitats with

continuous humidity and high temperature. Given its restricted range, the species is critically

imperiled by: habitat destruction and modification due to development; agricultural conversion;

regional drainage; changes in canopy and hydrology; competition from invasive species; changes

in climatic conditions, including sea rise; and natural stochastic events such as hurricanes.

93.     On October 9, 2014, the Service issued a proposed rule to list the Florida bristle

fern as endangered. 79 Fed. Reg. 61,136, 61,6158. Subsequently, on October 6, 2015, the Service

determined that the Florida bristle fern qualified for endangered species status under the ESA. 80

Fed. Reg. 60,440, 60,463. In the final rule, the Service found the designation of critical habitat to

be prudent, but not determinable at the time of listing because of an alleged lack of sufficient

information to perform an analysis of the impacts of designation. *Id.* at 60,465.

94.     The Service's failure to designate critical habitat at the time of listing due to it not

being determinable triggered the Service's duty to designate critical habitat within one year of

listing—i.e., by October 6, 2016. 16 U.S.C. § 1533(b)(6)(C)(ii).

95.     The Service's Workplan called for critical habitat to be proposed for the Florida

bristle fern in fiscal year 2018.

96.     After the Service failed to adhere to its Workplan, and after two years had elapsed

since the October 6, 2016 deadline to designate critical habitat, by letter dated January 8, 2019,

the Center notified Defendants that they have violated section 4 of the ESA, *id.*, by failing to

propose and designate critical habitat for the Florida bristle fern. The Center advised Defendants

that the Center intended to file suit to enforce the ESA's mandatory critical habitat deadlines. To date, Defendants have failed to propose or designate critical habitat for the Florida bristle fern.

97.     Until Defendants act and designate critical habitat for the Florida bristle fern, the species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**J.  Miami Tiger Beetle**

98.     Discovered in the 1930s, the Miami tiger beetle was presumed extinct until it was found in the Richmond Heights neighborhood of Miami, Florida. Dependent on the pine rockland community of south Florida, the threats facing the species are numerous and dire, including: habitat loss, degradation, and fragmentation; proposed future development; collection, trade and sale; inadequate protection from existing regulatory mechanisms; and its vulnerability to stochastic events, such as climate change and sea level rise.

99.     On December 22, 2015, the Service issued a proposed rule to list the Miami tiger beetle as endangered. 80 Fed. Reg. 79,533, 79,551. Subsequently, on October 5, 2016, the Service determined that the Miami tiger beetle qualified for endangered species status. 81 Fed. Reg. 68,985, 69,005. In the final rule, the Service found the designation of critical habitat to be prudent, but not determinable at the time of listing. *Id.* at 69,007. The Service also stated that it anticipated that the proposed rule designating critical habitat for the Miami tiger beetle would be published before the end of fiscal year 2017.

100.     The Service's failure to designate critical habitat at the time of listing due to it not being determinable triggered the Service's duty to designate critical habitat within one year of listing—i.e., by October 5, 2017. 16 U.S.C. § 1533(b)(6)(C)(ii).

101.    The Service's Workplan called for critical habitat to be proposed for the Miami tiger beetle in fiscal year 2017.

102.    After the Service failed to adhere to its Workplan, and after over a year had elapsed since the October 5, 2017 deadline to designate critical habitat, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, *id.*, by failing to propose and designate critical habitat for the Miami tiger beetle. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory critical habitat deadlines. To date, Defendants have failed to propose or designate critical habitat for the Miami tiger beetle.

103.    Until Defendants act and designate critical habitat for the Miami tiger beetle, the species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**K.  Suwannee Moccasinshell**

104.    The Suwannee moccasinshell is a freshwater mussel from the Suwannee River Basin in Florida and Georgia. Within its limited native range, the species and its habitat are threatened by: polluted runoff from agricultural lands; pollutants discharged or accidentally released from industrial and municipal wastewater sources and mining operations; decreased flows due to groundwater extraction and drought; stream channel instability; excessive sedimentation; inadequate legal protections; the potential of contaminant spills as a result of transportation accidents; increased drought frequency and degraded water quality as a result of changing climatic conditions; greater vulnerability to certain threats because of small population size and range; and competition and disturbance from invasive species.

105.    On October 6, 2015, the Service issued a proposed rule to list the Suwannee moccasinshell as threatened. 80 Fed. Reg. 60,335, 60,345. Afterwards, on October 6, 2016, the Service determined that the Suwannee moccasinshell qualified for threatened species status under the ESA. 81 Fed. Reg. 69,417, 69,422–23. In the final rule, the Service found the designation of critical habitat to be prudent, but not determinable at the time of listing. *Id.* at 69,423.

106.    The Service's failure to designate critical habitat at the time of listing due to it not being determinable triggered the Service's duty to designate critical habitat within one year of listing—i.e., by October 6, 2017. 16 U.S.C. § 1533(b)(6)(C)(ii).

107.    The Service's Workplan called for critical habitat to be proposed for the Suwannee moccasinshell in fiscal year 2018.

108.    After the Service failed to adhere to its Workplan, and after over a year had elapsed since the October 6, 2017 deadline to designate critical habitat, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, *id.*, by failing to propose and designate critical habitat for the Suwannee moccasinshell. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory critical habitat deadlines. To date, Defendants have failed to propose or designate critical habitat for the Suwannee moccasinshell.

109.    Until Defendants act and designate critical habitat for the Suwannee moccasinshell, the species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**L. Black Pine Snake**

110.    The black pine snake is a large, non-venomous constricting snake dependent on the Southeast's longleaf pine forests, which have been reduced to less than five percent of their original extent. Within the species' range, its native longleaf pine habitat is largely confined to isolated patches on private land and the DeSoto National Forest in Mississippi.

111.    The Service proposed to list the black pine snake as a threatened species on October 7, 2014. 79 Fed. Reg. 60,406, 60,414–15. On March 11, 2015, the Service proposed to designate critical habitat for the black pine snake. 80 Fed. Reg. 12,846. Then, on October 6, 2015, the Service determined threatened species status for the black pine snake. 80 Fed. Reg. 60,468, 60,60,485–86. The agency did not designate critical habitat concurrently with listing, or state that critical habitat was not then determinable. The agency later reopened the comment period on the March 11, 2015 proposed critical habitat designation and announced a revision to the original proposal. 83 Fed. Reg. 51,418 (Oct. 11, 2018). The listing of the black pine snake as a threatened species and the 2015 proposed critical habitat rule both independently triggered a requirement that the Secretary finalize its critical habitat designation for the black pine snake.

112.    The Service's Workplan called for the black pine snake's critical habitat designation to be finalized in fiscal year 2018.

113.    After the Service failed to adhere to its Workplan, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(A)(ii)(I), (b)(6)(C), by failing to make a final critical habitat designation for the species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory critical habitat deadlines. To date, Defendants have failed to finalize critical habitat for the black pine snake.

114.     Until Defendants act and designate critical habitat for the black pine snake, the species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**M. Elfin-woods Warbler**

115.     The elfin-woods warbler is a tiny, 5-inch bird that was first discovered in the dwarf forests of El Yunque National Forest—the only tropical rainforest under the U.S. National Forest system and one devasted by Hurricane Maria in the fall of 2017—in Puerto Rico in the 1970s. The primary threat to the elfin-woods warbler is the threat of habitat modification on private lands under agricultural and other land use requiring vegetation clearance. The species is also threatened by its restricted distribution, the lack of connectivity between dispersed populations, genetic drift, hurricanes, and the effects of climate change.

116.      The Service listed the elfin-woods warbler as a threatened species on June 22, 2016. 81 Fed. Reg. 40,534, 40,544. Concurrently, the Service proposed to designate approximately 27,125 acres in Puerto Rico as critical habitat for the elfin-woods warbler. 81 Fed. Reg. 40,632. The Service did not state that critical habitat was not then determinable. The listing of the elfin-woods warbler as a threatened species and the proposed critical habitat rule both independently triggered a requirement that the Service finalize its critical habitat designation for the elfin-woods warbler.

117.     The Service's own Workplan called for the elfin-woods warbler's critical habitat designation to be finalized in fiscal year 2017.

118.     After the Service failed to adhere to its own Workplan, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(A)(ii), (b)(6)(C), by failing to make a final critical habitat designation

for the species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory critical habitat deadlines. To date, Defendants have failed to finalize critical habitat for the elfin-woods warbler.

119.     Until Defendants act and designate critical habitat for the elfin-woods warbler, the elfin-woods warbler will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

**N.  Slickspot Peppergrass**

120.     Endemic to southwestern Idaho, the rare slickspot peppergrass is threatened by habitat destruction and fragmentation due to fire, invasive species, altered fire regimes, grazing and trampling by domestic livestock, urbanization, land trades, post-fire rehabilitation, military training range expansion and associated activities, road construction and alteration, mining, and recreation.

121.     The history of slickspot peppergrass' status under the ESA is a long and tortuous one. The Service first proposed to list the species as endangered on July 15, 2002. 67 Fed. Reg. 46,441, 46,447. After several administrative extensions, withdrawals, proposed rules, and lawsuits, the Service finally—after over 14 years had lapsed since the species was originally proposed for listing under the ESA—listed the slickspot peppergrass as threatened throughout its range. 81 Fed. Reg. 55,058, 55,082–83 (Aug. 17, 2016). The Service did not state that critical habitat was not then determinable. The listing of the slickspot peppergrass as a threatened species triggered a requirement that the Service finalize its critical habitat designation for the slickspot peppergrass.

122.     The Service's Workplan called for the slickspot peppergrass' critical habitat designation to be finalized in fiscal year 2017.

123.    After the Service failed to adhere to its Workplan, by letter dated January 8, 2019, the Center notified Defendants that they have violated section 4 of the ESA, 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(A)(ii), (b)(6)(C), by failing to make a final critical habitat designation for the species. The Center advised Defendants that the Center intended to file suit to enforce the ESA's mandatory critical habitat deadlines. To date, Defendants have failed to finalize critical habitat for the slickspot peppergrass.

124.    Until Defendants act and designate critical habitat for the slickspot peppergrass, the species will continue to decline toward extinction. There is no legal excuse for Defendants' failure to act.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Failure to Make a Timely 12-Month Finding for the Bartram Stonecrop

125.    The Center re-alleges the allegations in paragraphs 1-124.

126.    Defendants' failure to make a timely 12-month finding on the petition to list the Bartram stonecrop as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

### Second Claim for Relief
### Failure to Make a Timely 12-Month Finding for the Beardless Chinch Weed

127.    The Center re-alleges the allegations in paragraphs 1-126.

128.    Defendants' failure to make a timely 12-month finding on the petition to list the beardless chinch weed as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

## Third Claim for Relief
## Failure to Make a Timely 12-Month Finding for the Big Cypress Epidendrum

129.    The Center re-alleges the allegations in paragraphs 1-128.

130.    Defendants' failure to make a timely 12-month finding on the petition to list the Big Cypress epidendrum as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

## Fourth Claim for Relief
## Failure to Make a Timely 12-Month Finding for the Brook Floater

131.    The Center re-alleges the allegations in paragraphs 1-130.

132.    Defendants' failure to make a timely 12-month finding on the petition to list the brook floater as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C.

§ 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Fifth Claim for Relief**
**Failure to Make a Timely 12-Month Finding for the Cape Sable Orchid**

133.    The Center re-alleges the allegations in paragraphs 1-132.

134.    Defendants' failure to make a timely 12-month finding on the petition to list the Cape Sable orchid as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Sixth Claim for Relief**
**Failure to Make a Timely 12-Month Finding for the Clam-shell Orchid**

135.    The Center re-alleges the allegations in paragraphs 1-134.

136.    Defendants' failure to make a timely 12-month finding on the petition to list the clam-shell orchid as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Seventh Claim for Relief**
**Failure to Make a 12-Month Finding for the Elk River Crayfish**

137.    The Center re-alleges the allegations in paragraphs 1-136.

138.    Defendants' failure to make a timely 12-month finding on the petition to list the Elk River crayfish as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Eighth Claim for Relief**
**Failure to Make a 12-Month Finding for the Franklin's Bumblebee**

139.    The Center re-alleges the allegations in paragraphs 1-138.

140.    Defendants' failure to make a timely 12-month finding on the petition to list the Franklin's bumblebee as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Ninth Claim for Relief**
**Failure to Make a 12-Month Finding for the Longsolid**

141.    The Center re-alleges the allegations in paragraphs 1-140.

142.    Defendants' failure to make a timely 12-month finding on the petition to list the longsolid as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants'

failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Tenth Claim for Relief**
**Failure to Make a 12-Month Finding for the Panamint Alligator Lizard**

143.    The Center re-alleges the allegations in paragraphs 1-142.

144.    Defendants' failure to make a timely 12-month finding on the petition to list the Panamint alligator lizard as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Eleventh Claim for Relief**
**Failure to Make a 12-Month Finding for the Pyramid Pigtoe**

145.    The Center re-alleges the allegations in paragraphs 1-144.

146.    Defendants' failure to make a timely 12-month finding on the petition to list the pyramid pigtoe as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is

arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

### Twelfth Claim for Relief
### Failure to Make a 12-Month Finding for the Purple Lilliput

147.     The Center re-alleges the allegations in paragraphs 1-146.

148.     Defendants' failure to make a timely 12-month finding on the petition to list the purple lilliput as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

### Thirteenth Claim for Relief
### Failure to Make a 12-Month Finding for the Round Hickorynut

149.     The Center re-alleges the allegations in paragraphs 1-148.

150.     Defendants' failure to make a timely 12-month finding on the petition to list the round hickorynut as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

### Fourteenth Claim for Relief
### Failure to Make a 12-Month Finding for the Seaside Alder

151.     The Center re-alleges the allegations in paragraphs 1-150.

152.     Defendants' failure to make a timely 12-month finding on the petition to list the seaside alder as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

### Fifteenth Claim for Relief
### Failure to Make a 12-Month Finding for the Tricolored Blackbird

153.     The Center re-alleges the allegations in paragraphs 1-152.

154.     Defendants' failure to make a timely 12-month finding on the petition to list the tricolored blackbird as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

### Sixteenth Claim for Relief
### Failure to Make a 12-Month Finding for the Yellow-banded Bumblebee

155.     The Center re-alleges the allegations in paragraphs 1-154.

156.     Defendants' failure to make a timely 12-month finding on the petition to list the yellow-banded bumblebee as endangered or threatened violates the ESA. 16 U.S.C. § 1533(b)(3)(B). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of

the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply

with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law,

and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

### Seventeenth Claim for Relief
### Failure to Make a Timely Final Listing Determination for the Meltwater Lednian Stonefly

157.    The Center re-alleges the allegations in paragraphs 1-156.

158.    Defendants' failure to make a timely final listing determination for the meltwater

lednian stonefly violates the ESA. 16 U.S.C. § 1533(b)(6)(A). Defendants' failure to perform

their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or

unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or

alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an

abuse of discretion, not in accordance with law, and a failure to observe proper procedure under

the APA. 5 U.S.C. § 706(2).

### Eighteenth Claim for Relief
### Failure to Make a Timely Final Listing Determination for the Western Glacier Stonefly

159.    The Center re-alleges the allegations in paragraphs 1-158.

160.    Defendants' failure to make a timely final listing determination for the western

glacier stonefly violates the ESA. 16 U.S.C. § 1533(b)(6)(A), 1533(b)(6)(B)(iii). Defendants'

failure to perform their mandatory, non-discretionary duty also constitutes agency action

"unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. §

706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is

arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to

observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Nineteenth Claim for Relief**
**Failure to Designate Critical Habitat for the Florida Bristle Fern**

161.   The Center re-alleges the allegations in paragraphs 1-160.

162.   Defendants' failure to designate critical habitat for the Florida bristle fern violates the ESA. 16 U.S.C. § 1533(b)(6)(C)(ii). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Twentieth Claim for Relief**
**Failure to Designate Critical Habitat for the Miami Tiger Beetle**

163.   The Center re-alleges the allegations in paragraphs 1-162.

164.   Defendants' failure to designate critical habitat for the Miami tiger beetle violates the ESA. 16 U.S.C. § 1533(b)(6)(C)(ii). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Twenty-first Claim for Relief**
**Failure to Designate Critical Habitat for the Suwannee Moccasinshell**

165.   The Center re-alleges the allegations in paragraphs 1-164.

166.   Defendants' failure to designate critical habitat for the Suwannee moccasinshell violates the ESA. 16 U.S.C. § 1533(b)(6)(C)(ii). Defendants' failure to perform their mandatory,

non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Twenty-second Claim for Relief**
**Failure to Make a Timely Final Critical Habitat Designation for the Black Pine Snake**

167.    The Center re-alleges the allegations in paragraphs 1-166.

168.    Defendants' failure to make a timely final critical habitat designation for the black pine snake violates the ESA. 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(A)(ii), (b)(6)(C). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

**Twenty-third Claim for Relief**
**Failure to Make a Timely Final Critical Habitat Designation for the Elfin-woods Warbler**

169.    The Center re-alleges the allegations in paragraphs 1-168.

170.    Defendants' failure to make a timely final critical habitat designation for the elfin-woods warbler violates the ESA. 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(A)(ii), (b)(6)(C). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is

arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

## Twenty-fourth Claim for Relief
**Failure to Make a Timely Final Critical Habitat Designation for the Slickspot Peppergrass**

171.    The Center re-alleges the allegations in paragraphs 1-170.

172.    Defendants' failure to make a timely final critical habitat designation for the slickspot peppergrass violates the ESA. 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(A)(ii), (b)(6)(C). Defendants' failure to perform their mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, Defendants' failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the APA. 5 U.S.C. § 706(2).

## REQUEST FOR RELIEF

The Center respectfully requests that the Court enter judgment providing the following relief:

A.    Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the Bartram stonecrop as endangered or threatened under the ESA;

B.    Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Bartram stonecrop by a date certain;

C.    Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the beardless chinch weed as endangered or threatened under the ESA;

D.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the beardless chinch weed by a date certain;

E.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the Big Cypress epidendrum as endangered or threatened under the ESA;

F.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Big Cypress epidendrum by a date certain;

G.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the brook floater as endangered or threatened under the ESA;

H.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the brook floater by a date certain;

I.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the Cape Sable orchid as endangered or threatened under the ESA;

J.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Cape Sable orchid by a date certain;

K.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the clam-shell orchid as endangered or threatened under the ESA;

L.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the clam-shell orchid by a date certain;

M.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the Elk River crayfish as endangered or threatened under the ESA;

N.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Elk River crayfish by a date certain;

O.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the Franklin's bumblebee as endangered or threatened under the ESA;

P.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Franklin's bumblebee by a date certain;

Q.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the longsolid as endangered or threatened under the ESA;

R.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the longsolid by a date certain;

S.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the Panamint alligator lizard as endangered or threatened under the ESA;

T.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the Panamint alligator lizard by a date certain;

U.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the pyramid pigtoe as endangered or threatened under the ESA;

V.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the pyramid pigtoe by a date certain;

W.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the purple lilliput as endangered or threatened under the ESA;

X.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the purple lilliput by a date certain;

Y.      Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the round hickorynut as endangered or threatened under the ESA;

Z.      Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the round hickorynut by a date certain;

AA.     Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the seaside alder as endangered or threatened under the ESA;

BB.     Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the seaside alder by a date certain;

CC.     Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the tricolored blackbird as endangered or threatened under the ESA;

DD.     Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the tricolored blackbird by a date certain;

EE.     Declare that Defendants have violated the ESA and/or the APA by failing to issue a timely 12-month finding in response to the petition to list the yellow-banded bumblebee as endangered or threatened under the ESA;

FF.     Provide injunctive relief compelling Defendants to publish in the Federal Register a 12-month finding on the petition to list the yellow-banded bumblebee by a date certain;

GG.     Declare that Defendants have violated the ESA and/or the APA by failing to make a timely final listing determination for the meltwater lednian stonefly;

HH.     Provide injunctive relief compelling Defendants to publish in the Federal Register a final listing determination for the meltwater lednian stonefly by a date certain;

II.     Declare that Defendants have violated the ESA and/or the APA by failing to make a timely final listing determination for the western glacier stonefly;

JJ.     Provide injunctive relief compelling Defendants to publish in the Federal Register a final listing determination for the western glacier stonefly by a date certain;

KK.     Declare that Defendants have violated the ESA and/or the APA by failing to make a timely critical habitat designation for the Florida bristle fern;

LL.     Provide injunctive relief compelling Defendants to designate final critical habitat for the Florida bristle fern by a date certain;

MM.     Declare that Defendants have violated the ESA and/or the APA by failing to make a timely critical habitat designation for the Miami tiger beetle;

NN.     Provide injunctive relief compelling Defendants to designate final critical habitat for the Miami tiger beetle by a date certain;

OO.     Declare that Defendants have violated the ESA and/or the APA by failing to make a timely critical habitat designation for the Suwannee moccasinshell;

PP.    Provide injunctive relief compelling Defendants to designate final critical habitat for the Suwannee moccasinshell by a date certain;

QQ.    Declare that Defendants have violated the ESA and/or the APA by failing to make a timely final critical habitat designation for the black pine snake;

RR.    Provide injunctive relief compelling Defendants to designate final critical habitat for the black pine snake by a date certain;

SS.    Declare that Defendants have violated the ESA and/or the APA by failing to make a timely final critical habitat designation for the elfin-woods warbler;

TT.    Provide injunctive relief compelling Defendants to designate final critical habitat for the elfin-woods warbler by a date certain;

UU.    Declare that Defendants have violated the ESA and/or the APA by failing to make a timely final critical habitat designation for the slickspot peppergrass;

VV.    Provide injunctive relief compelling Defendants to designate final critical habitat for the slickspot peppergrass by a date certain;

WW.    Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

XX.    Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

YY.    Provide such other relief as the Court deems just and proper.


Dated this 17th day of April, 2019                    Respectfully submitted,

                                                      */s/ Ryan Adair Shannon*

                                                      Ryan Adair Shannon
                                                      (D.C. Bar No. OR 00007)

Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(503) 283-5474 ext. 407
rshannon@biologicaldiversity.org

*/s/ Amy R. Atwood*
Amy R. Atwood
(D.C. Bar No. 470258)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6401
atwood@biologicaldiversity.org

*Attorneys for Plaintiff*